IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JENNIFER ANN POTOKA            )
                               )    No. 15-756
       v.                      )

CAROLYN W. COLVIN

## OPINION AND ORDER

### SYNOPSIS

Plaintiff filed an application for disability insurance benefits, based on allegations of mental and physical impairments. Plaintiff's claim was denied initially and upon hearing before an administrative law judge ("ALJ"). The Appeals Council denied her request for review, and this appeal followed. Before the Court are the parties' Cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion will be denied, and Defendant's granted.

### OPINION

### I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3)7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's

findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

The Commissioner engages in a five-step sequential evaluation process to determine whether a person is eligible for disability benefits. That process considers: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals an impairment listed in the regulations (a "Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. In connection with this process, the ALJ must also determine a claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

## II. THE PARTIES' MOTIONS

Plaintiff's Motion focuses on the ALJ's treatment of her intellectual deficits. She contends that he erred when he failed to consider Listing 12.05(B) at step three of the sequential analysis, because the record contained IQ scores and other evidence of intellectual disability prior to the age of 22. In particular, Plaintiff refers to the fact that her educational records reflect a full scale IQ score of 70, a performance scale of 86, and a verbal scale of 58; the testing was completed when she was ten years old. Defendant contends, inter alia, that Plaintiff did not allege any type of intellectual impairment before the ALJ, and thus the ALJ did not err in failing to consider such an impairment; further, Defendant asserts, the ALJ found at step two that Plaintiff's intellectual impairment was no more than minimal, and therefore was not required to consider Listing 12.05 at step three. Plaintiff responds that IQ and IEP evidence were placed before the ALJ, along with other evidence that would support intellectual impairment; it is, she contends, the ALJ's duty to investigate the facts and develop arguments. Plaintiff further counters that the ALJ erred at step two, because he failed to address the IQ evidence. In so doing, she agrees that if the step two finding is sound, a failure to evaluate the impairment at step three is harmless.

Thus, I address the ALJ's step two analysis from the outset. At this stage of the sequential evaluation, an ALJ considers whether a claimant suffers from a severe impairment. A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities. § 404.1520(a)(ii), (c). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the step two requirement. Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007). The question of severity relies not on the particular condition, but on the limitations stemming from that condition. Only a severe

impairment can render a claimant disabled. Leyva v. Comm'r of Soc. Sec., 379 Fed. Appx. 133, 134 (3d Cir. 2010). Accordingly, if an impairment is non-severe, the ALJ is not required to consider it when he applies the Listings. Pritchett v. Astrue, 220 Fed. Appx. 790 (10th Cir. 2007).

"[I]n order to demonstrate reversible error based upon a mistake regarding a level of severity of an impairment, the plaintiff must show that she had functional limitations from that condition that were not included in the law judge's determination of the plaintiff's residual functional capacity." Thompson v. Colvin, 2014 U.S. Dist. LEXIS 18095 (M.D. Fla. Feb. 6, 2014). "Where at least one impairment is found to be 'severe' and the limitations resulting from the claimant's remaining impairments are properly considered, an error committed at the second step of the process with respect to one of those other impairments is inconsequential." Keck v. Colvin, 2014 U.S. Dist. LEXIS 134381 (M.D. Pa. Sept. 24, 2014). Further, "[i]t has been held that a score from an objective test is insufficient to establish an impairment unless accompanied by a diagnosis or finding of the impairment." Gamez v. Astrue, 2010 U.S. Dist. LEXIS 24119 (E.D. Cal. Feb. 25, 2010).

In this case, the ALJ did not err at step two. He observed that Plaintiff was diagnosed with a specific learning disability and participated in special education classes. He further noted, however, that other than a nurse practitioner's observation that Plaintiff's intellect appeared to be below average to average, there was no indication that Plaintiff had been diagnosed with intellectual disability.[1] He also considered Plaintiff's activities, such as independent self-care, caring for her children, and managing her finances. He concluded that the record did not reflect an intellectual impairment that imposes more than minimal functional limitations in the ability to

---

[1] The ALJ also noted that Plaintiff had not been "treated for an intellectual disability." I agree with Plaintiff that this is, to say the least, an odd formulation. It does not constitute reversible error under the circumstances, however, as the ALJ plainly did not rely solely on lack of such "treatment" in reaching his conclusions.

4

perform work-related activities. Plaintiff has not demonstrated that she had functional limitations from her intellectual deficits that were not included in the ALJ's RFC finding. Although the ALJ did not specifically address the IQ scores, he addressed the records containing those scores.[2] Moreover, because he found severe impairments of depression and anxiety, the analysis proceeded to the next step. Finally, Plaintiff's childhood IQ score does not necessarily bear on the extent of her functional limitations resulting from that score.

It is true that when there is a suggestion of mental impairment, the ALJ has a duty to develop the record "by inquiring into the present status of impairment and its possible effects on the claimant's ability to work." Plummer v. Apfel, 186 F.3d 422, 434 (3d Cir. 1999). On the other hand, when a claimant is represented by counsel, an ALJ is entitled to assume that an applicant is making his strongest case for benefits. Yoder v. Colvin, 2014 U.S. Dist. LEXIS 82556, at *7 (W.D. Pa. June 18, 2014). Thus, the fact that a claimant does not allege mental retardation or intellectual impairment as a basis for disability "is significant." Baker v. Colvin, 2016 U.S. Dist. LEXIS 20394, at *9 (W.D. Ark. Feb. 19, 2016). In this case, the ALJ discharged his duty at step two of the analysis, when he inquired into the severity of Plaintiff's intellectual disability. In light of the entire record that the ALJ considered, including Plaintiff's activities and the lack of a diagnosis pertaining to intellectual disability, the ALJ was not required to consider Listing 12.05. In other words, the evidence of record did not indicate that the Listing should have been explicitly evaluated. See Deloney v. Colvin, 2016 U.S. Dist. LEXIS 43847

---

[2] While I cannot assess whether substantial evidence exists on grounds other than those considered by the ALJ, such grounds bear on whether an error, if made, was harmless. In that regard, I note that Plaintiff's IQ scores were accompanied by the observation that it was "likely that [Plaintiff] had higher ability than was indicated by her verbal or Fullscale [sic] scores," and that this pattern was substantiated by other testing.

(S.D. Ind. Mar. 31, 2016). The ALJ's handling of this issue was supported by substantial evidence, and neither reversal nor remand of this matter is justified.[3]

## CONCLUSION

In conclusion, Plaintiff's Motion will be denied, and Defendant's granted. An appropriate Order follows.

## ORDER

AND NOW, this 11th day of August, 2016, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is DENIED and Defendant's GRANTED.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court

---

[3] Although I do not reach the Plaintiff's step three argument, I note that cases in which the failure to address an IQ score were error differ from the case at bar. For example, in Clawson v. Astrue, 2013 U.S. Dist. LEXIS 5710 (W.D. Pa. 2013), the ALJ discussed Listing 12.05, but omitted reference to a pertinent IQ score in the record. In Robles v. Colvin, 2014 U.S. Dist. LEXIS 73142 (W.D. Okla. May 29, 2014), it was error when the ALJ failed to address an IQ score and Listing 12.05, where the score was supported with the examiner's indicia of validity. In that context, the failure to discuss the IQ score was error. Here, the IQ score was not accompanied by indicia of validity (instead, its accuracy was questioned); nor did the ALJ reach any Listing. Although the ALJ did not consider indicia of the reliability of Plaintiff's score, and thus nor do I, that fact goes to the harmlessness of any error made.